**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Troy King, | No. CV-25-03686-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Julia Owner LLC, et al., | |
| Defendants. | |

Plaintiff Troy King filed a complaint and an application to proceed in forma pauperis. (Docs. 1, 2.) King is entitled to proceed in forma pauperis but granting that application allows the court to determine whether the complaint states any claims on which he might be able to obtain relief. 28 U.S.C. § 1915(e)(1). It does not.

**I.      Factual Background**

King is a Black male who in July 2021 "entered into a lease agreement with The Julia Owner LLC," the owner of an apartment complex. (Doc. 1 at 3.) King "encountered racism" during his initial attempt to rent an apartment but after a complaint to "the regional manager," he rented "a unit at the rate agreed upon." (Doc. 1 at 3.) In September 2021, King went to the rental office to inform them that his son was no longer allowed in the unit due to a temporary restraining order. (Doc. 1 at 3.) During this visit King "witnessed The Julia's staff conspiring to charge him more, while quoting a White family a lower rate." (Doc. 1 at 4.) King does not provide any additional facts regarding this event, but he filed a complaint with the Arizona Attorney General's Office based on what he witnessed. (Doc.

1 at 4.) It is not clear what became of that complaint but King continued to live at the apartment complex.

In August 2023, a new management company took over management of the apartment complex for The Julia. (Doc. 1 at 4.) Around this time King attempted to execute a lease renewal to run from October 1, 2023 through September 29, 2024. (Doc. 1 at 4.) At this point King's allegations become particularly difficult to follow.

According to King, "the annual lease renewal was fraudulently denied" by the new management company. (Doc. 1 at 4.) Unidentified "malicious actions" by the management company "render[ed] the lease non-binding." (Doc. 1 at 4.) Although he emphasizes the lease meant to begin on October 1, 2023 was not valid, King admits he was still living in the apartment as of early October when the management company "conspired to remove [King] from the property due to his filing government complaints . . . for racial discrimination and harassment." (Doc. 1 at 4.) King does not identify the complaints he is referencing but he may be referencing the complaint he had filed with the Arizona Attorney General two years earlier.

On October 5, 2023, The Julia "filed fraudulent court documents in an Immediate Eviction process and made disparaging racial statements to deceive the judicial machinery into ruling in their favor." (Doc. 1 at 4.) King does not identify the "disparaging racial statements" but he attached to his complaint a copy of the "Immediate Termination Notice" dated October 6, 2023. (Doc. 1 at 16.) That notice demanded King vacate the apartment because he had engaged in "threatening and intimidating actions toward another resident by threatening them with a sledgehammer, destruction of property." (Doc. 1 at 16.)

In December 2023, an agent of the Julia "provided truthful testimony during Plaintiff's civil standby[1] while accompanied by a Mesa Police Officer." (Doc. 1 at 3.) Despite labeling the testimony as "truthful," King then describes it as "part of a malicious,

---

[1] King appears to be referring to a "civil standby" as defined in *State v. Groves*, No. 1 CA-CR 22-0384, 2023 WL 2885049, at *1 (Ariz. Ct. App. Apr. 11, 2023) ("A 'civil standby' generally involves the presence of law enforcement to maintain peace when parties to a dispute are hostile toward one another but must be at the same location, such as when one party is lawfully retrieving personal property from the other party's residence.").

- 2 -

racially motivated attempt to deceive the judicial system and racialize the proceedings, rooted in a history of violence and oppression targeting people of Plaintiff's race and gender." (Doc. 1 at 3.) King does not explain why he believes "truthful testimony" was part of a racially-motivated attack on him.

In January 2024, an unidentified agent of The Julia made a "racially charged rant" in an "untruthful statement to the Arizona State Bar." (Doc. 1 at 4.) There is no explanation whether King is referencing the Arizona State Bar—the entity that regulates the practice of law in Arizona—or if he is equating the Arizona State Bar with the state court system. Regardless, King quotes the "racially charged rant" when an agent of The Julia "stated that there was a witness who would support the allegations in the breach notice. However, this witness refused to testify for fear of retaliation." (Doc. 1 at 4.) King believes this statement was a "masterpiece of mendacity," but he does not explain why that statement was racially-charged or mendacious.

In November 2024, King discovered The Julia and its agents "had been altering court documents." (Doc. 1 at 5.) He provides no additional facts explaining this allegation. Similarly, King alleges "Columbia Debt Recover dba Genesis requested a signed copy of the lease, which was refused by The Julia." (Doc. 1 at 5.) There is no explanation how this other entity figures into King's claims or how a request by that entity for the lease is relevant to them.

After this factual background King's complaint includes multiple pages asserting—without additional factual elaboration—how outrageous The Julia's actions were. For example, King alleges The Julia "willfully, systemically, and reprehensibly violated the Civil Rights Act of 1964" by engaged in "egregious racial harassment and discrimination." (Doc. 1 at 5.) The Julia also "brazenly, maliciously, and egregiously violated 42 U.S.C. § 1981." (Doc. 1 at 5.) And The Julia engaged in "outright, brazen obstruction of justice—an egregious and criminal conduct that strikes at the core of the judicial process." (Doc. 1 at 7-8.) After those pages King lists the seven claims he wishes to pursue:

    1. Fair Housing Act ("FHA");

2. 42 U.S.C. § 1981;

3. Arizona Civil Rights Act ("ACRA");

4. "Tort of Fraud";

5. Obstruction of Justice;

6. "Conspiracy (Civil Tort), A.R.S. § 12-1801"; and

7. "Harassment (Based on Racial Discrimination)[.]" (Doc. 1 at 9–13.)

## II. Screening Standard

King may pursue his claims only if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. King's Claims

Some of King's seven claims are not supported by sufficient factual allegations while others are premised on legal theories that are not viable. All seven claims are dismissed with limited leave to amend.

### A. Fair Housing Act, 42 U.S.C. § 1981, and Arizona Civil Rights Act

King alleges claims under the FHA, 42 U.S.C. § 1981, and ACRA. It appears King is basing these claims on the failure to renew his lease in September 2023 and events in October 2023 involving the "Immediate Eviction" process.[2] (Doc. 1 at 4.) But regardless

---

[2] King also may be claiming the actions taken against him were in retaliation for his "filing government complaints." (Doc. 1 at 4.) But the only government complaint referenced in the complaint was filed in 2021 and the allegedly retaliatory actions occurred two years later. King has not provided any plausible allegations linking his "government complaint" in 2021 to the events in 2023. To the extent King is attempting to pursue a retaliation-based claim, that claim is also dismissed. *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d

- 4 -

of which events King bases these claims on, stating a claim under the FHA, § 1981, and ACRA requires allegations indicating the defendant engaged in intentional discrimination.[3] King has not alleged any facts supporting his assertion The Julia's actions were based on his race.

King alleges the refusal to renew his lease and the "Immediate Eviction" process involved "disparaging racial statements" and a "racially charged rant." (Doc. 1 at 4.) But King does not include any statements that could plausibly be interpreted as disparaging or "racially charged." The only statement King includes in his complaint—which he identifies as "racially charged"—is the statement discussed earlier that a "witness refused to testify for fear of retaliation." (Doc. 1 at 4.) This statement has no obvious connection to King's race. And with no other supporting facts indicating the relevant actions were taken because of King's race, the statement does not provide a sufficient basis for King's race discrimination claims. If King believes the refusal to renew his lease and to pursue his eviction were because of his race, he must provide facts making such claims plausible. The FHA, § 1981, and ACRA claims are dismissed with leave to amend.

**B. "Tort of Fraud"**

King's next claim is identified as the "tort of fraud." (Doc. 1 at 11.) Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for claims involving fraud. "To properly plead fraud . . . a pleading must identify the who, what, when, where, and how of the misconduct charged." *In re Cloudera, Inc.*, 121 F.4th 1180, 1187 (9th Cir. 2024) (simplified). This requires "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Id.* (simplified). This is a difficult standard to meet, and King has not done so.

King does not provide any specific details regarding the allegedly fraudulent acts.

---

470, 477 (9th Cir. 1998) (FHA retaliation claim requires the adverse events be "causally linked" to protected activity).

[3] *See Ave. 6E Invs., LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 502 (9th Cir. 2016) (FHA "prohibits intentional discrimination"); *Comcast Corp. v. Nat'l Assoc. of Afr. Am.-Owned Media*, 589 U.S. 327, 337, 341 (2020) (Section 1981 requires a plaintiff "initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right"); *Canady v. Prescott Canyon Ests. Homeowners Ass'n*, 60 P.3d 231, 233 n.3 (Ariz. Ct. App. 2002) (Arizona's Fair Housing Act is "virtually identical" to the FHA).

Instead King's complaint makes only vague statement that that "The Julia Owner LLC and their agents" engaged in harmful activities. (Doc. 1 at 8.) And in the specific portion of the complaint devoted to the "tort of fraud," King alleges "The Defendant and their agent(s)" fabricated documents, made "false representations," and omitted "material facts." (Doc. 1 at 11.) Such conclusory and vague allegations are not sufficient. To state a claim for fraud King must identify the specific individuals, the specific documents, the specific representations, and the specific omissions that establish he was the victim of fraud. Having failed to do so, the fraud claim is dismissed with leave to amend.

### C. "Obstruction of Justice"

King's claim appears to be brought as a criminal claim for obstruction of justice. King is a private citizen who cannot institute criminal proceedings. *See State v. Lamberton*, 899 P.2d 939, 942 (Ariz. 1995) ("[n]o private citizen, however personally aggrieved, may institute criminal proceedings independently"); *Scherer v. United States*, 241 F. Supp. 2d 1270, 1282 (D. Kan. 2003) ("Federal courts have consistently denied a private civil right of action under 18 U.S.C. § 1503, the criminal statute against jury tampering, witness intimidation, and obstruction of justice."). The obstruction of justice claim is dismissed without leave to amend.

### D. "Conspiracy (Civil Tort) A.R.S. § 12-1801"

King's next claim is titled "Conspiracy (Civil Tort), A.R.S. § 12-1801." The cited statute outlines when judges of state courts "may grant writs of injunction." A.R.S. § 12-1801. That has no obvious connection to King's claims. Assuming the statutory citation was in error and King is attempting to bring a state-law claim for conspiracy, such a claim requires sufficient allegations showing "two or more individuals agree[d] and thereupon accomplish[ed] an underlying tort which the alleged conspirators agreed to commit." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 36 (Ariz. 2002). King has not alleged an underlying tort, so his conspiracy claim is dismissed with leave to amend.

### E. Harassment (Based on Racial Discrimination)

King's final claim is for "harassment" by The Julia and its agents that "included racial trope [sic], intimidation, retaliatory actions, and the creation of a hostile living environment." (Doc. 1 at 13.) The court has been unable to locate any authority establishing "harassment" as a tort in Arizona. *See Rivera v. Town of Patagonia*, No. CV-16-00164-TUC-CKJ, 2016 WL 11693697, at *9 (D. Ariz. Aug. 10, 2016) ("Ms. Rivera does not point to any Arizona case that has recognized a civil cause of action for harassment."). Arizona law recognizes criminal harassment, but as a private party King cannot pursue criminal charges against The Julia. *Id.* King's harassment claim is dismissed without leave to amend.

### IV. Leave to Amend

King is granted leave to file an amended complaint. King may amend his claims under the FHA, § 1981, ACRA, fraud, and conspiracy. King may not amend his claims for obstruction of justice or "harassment." If King chooses to amend, he must provide a much more understandable and detailed recital of the basic facts that support his claims.

**IT IS ORDERED** the Application (Doc. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** the complaint (Doc. 1) is **DISMISSED WITH LIMITED LEAVE TO AMEND**. No later than **October 31, 2025**, King shall file an amended complaint consistent with the instructions above. The Clerk of Court is directed to enter a judgment of dismissal with prejudice if no amended complaint is filed by that date.

Dated this 20th day of October, 2025.

Honorable Krissa M. Lanham
United States District Judge