**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Troy King, | No. CV-25-03686-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Julia Owner LLC, et al., | |
| Defendants. | |

Plaintiff Troy King, proceeding in forma pauperis, amended his complaint after the court dismissed his original complaint with limited leave to amend. (Docs. 6, 7.) Screening the amended complaint under 28 U.S.C. § 1915(e)(1), King still does not state any claims on which he might be able to obtain relief. His amended complaint is therefore dismissed, this time without leave to amend.

**I.     Factual and Procedural Background**

The first screening order provides the factual background that can be discerned from King's complaints. (Doc. 6 at 1–2.) It is clear he is a Black male who began living at an apartment complex managed by defendant The Julia Owner LLC in around July 2021. (Doc. 6 at 1; Doc. 7 at 4.) King's relationship with The Julia's management appears to have been troubled almost from the start, with King alleging he witnessed The Julia's staff quoting a White family a lower rate in September 2021. (Doc. 6 at 1; Doc. 7 at 4.) King filed a complaint with the Arizona Attorney General's Office alleging racial discrimination on October 19, 2021. (Doc. 7 at 1.) Several months later in May 2022, he filed another

complaint with the Arizona Attorney's Office alleging racial discrimination and harassment because The Julia's former management "became irate" when he visited the office and threatened to make false allegations that King harassed management staff. (Doc. 7 at 4.) King also filed a complaint with the former management company's onsite property manager in October 2022 when a maintenance worker "had an attitude" and failed to repair his sink. (Doc. 7 at 5.)

Greystar Management took over managing the complex in August 2023. (Doc. 7 at 5.) King's relationship with Greystar was no less troubled, and he alleges The Julia fraudulently denied him a lease renewal in September 2023, filed an unlawful eviction action against him, and "knowingly and maliciously filed fraudulent court documents" during that eviction action. (Doc. 7 at 6.) At some point afterwards, he filed a complaint against The Julia's lawyer with the State Bar of Arizona and the lawyer "made a racially charged rant" during the bar proceedings when she said "There was a witness who would support the allegations in the breach notice. However, this witness refused to testify for fear of retaliation." (Doc. 7 at 6.)

This court screened King's previous complaint under 28 U.S.C. § 1915(e)(1) and dismissed it with leave to amend only his Fair Housing Act (FHA), 42 U.S.C. § 1981 discriminatory contracting, Arizona Civil Rights Act (ACRA), fraud, and conspiracy claims. (Doc. 6 at 7.) That order provided specific details on what King's complaint was lacking to properly allege the elements of each claim. (*See* Doc. 6 at 4–6.) King amended his complaint on October 31, 2025. (Doc. 7.)

II.     **Screening Standard**

The same standard applies now as in the initial screening order. King may pursue his claims only if the amended complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted

unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. King's Amended Claims

#### A. Fair Housing Act, 42 U.S.C. § 1981, and Arizona Civil Rights Act

The court explained in its original screening order that King's claims failed because although he claimed racially-discriminatory statements existed and quoted some of The Julia's purported statements, none of those statements actually appeared to be connected to his race. (Doc. 6 at 5.) Accordingly, King failed to allege sufficient facts to show The Julia engaged in intentional discrimination, an element required under the FHA, § 1981, and ACRA. (Doc. 6 at 5.) His amended complaint fares no better.

King's amended complaint once again alleges The Julia used "racial slurs, stereotypes, and discriminatory policies," conducted a "racially motivated attack" through "truthful testimony" as part of a civil standby, and undertook "a malicious, racially motivated attempt to deceive the judicial system." (Doc. 7 at 2–3.) But exactly as in his original complaint, the statements and actions of which he complains are not obviously (or even tangentially) connected to his race. (*See* Doc. 7 at 3 (citing a cease-and-desist letter claiming he "engaged in loud, obnoxious, or harassing behavior, inappropriately entered the rental office on September 27, 2023, . . . acted aggressively and threateningly towards the leasing office, and used vulgar language that the maintenance staff heard in his unit"), Doc. 7 at 3–4 (citing former management's false statements that nothing prevented King from entering the rental office—when in fact a cease and desist letter did—and claiming he "harass[ed]" people in the rental office), Doc. 7 at 6 (discussing The Julia's attorney's statement in response to King's Arizona Bar complaint that "There was a witness who would support the allegations in the breach notice. However, this witness refused to testify for fear of retaliation.").) King's amended complaint does not allege any other facts

suggesting The Julia engaged in intentional discrimination. Accordingly, his amended FHA, § 1981, and ACRA claims are dismissed.

### IV.     The "Tort of Fraud"

The court dismissed the fraud claim in King's original complaint because he "did not provide any specific details regarding the allegedly fraudulent acts" and therefore failed to meet Fed. R. Civ. P. 9(b)'s heightened pleading standard for claims involving fraud. (Doc. 6 at 5–6.) The screening order cautioned that to state a fraud claim in his amended complaint, King needed to provide "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." (Doc. 6 at 5 (quoting *In re Cloudera, Inc.*, 121 F.4th 1180, 1187 (9th Cir. 2024).)

King provided slightly more detail regarding the alleged false representations in his amended complaint, claiming The Julia submitted unsigned or altered lease agreements to "the judicial system" (presumably during his immediate eviction proceedings). (Doc. 7 at 10–11, 13.) But despite apparently having access to the eviction filings, King still does not allege the time or place of the false representations, nor specify what content within those lease agreements was altered or omitted. Without these details, King's amended fraud allegations are once again conclusory and insufficient to meet Rule 9(b)'s heightened standard. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (holding "mere conclusory allegations" and "[b]road allegations that include no particularized supporting detail" are insufficient to state a fraud claim) (simplified). King's fraud claim is dismissed.

### V.      Conspiracy (Civil Tort)

As the court previously told King, a state-law claim for conspiracy requires factual allegations showing "two or more individuals agree[d] and thereupon accomplish[ed] an underlying tort which the alleged conspirators agreed to commit." (Doc. 6 at 6 (quoting *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 36 (Ariz. 2002)).) Because his amended complaint does not allege an underlying tort, King's conspiracy claim is dismissed again.

### VI. Leave to Amend

The screening order dismissing King's original complaint made clear the required factual allegations for each of the claims it allowed King to amend. Despite that order's specificity, King's amended complaint made no headway in meeting those requirements. In this situation, amendment would be futile. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051-52 (9th Cir. 2008) (affirming denial of leave to amend as futile where district court's order dismissing original complaint put plaintiffs "on notice . . . of the same defects" that led to dismissal of amended complaint). All of King's claims are dismissed without leave to amend.

**IT IS ORDERED** the amended complaint (Doc. 7) is **dismissed without leave to amend** for failure to state a claim. *See* 28 U.S.C. § 1915(e)(1). The Clerk of Court shall enter judgment accordingly and close this case.

Dated this 5th day of November, 2025.

Honorable Krissa M. Lanham
United States District Judge